206 Cal.App.3d 1513 (1988)
254 Cal. Rptr. 478
LYDIA W. CARNEY, Plaintiff and Appellant,
v.
ROTKIN, SCHMERIN & McINTYRE et al., Defendants and Respondents.
Docket No. B030120.
Court of Appeals of California, Second District, Division Five.
December 30, 1988.
*1517 COUNSEL
Turner, Cooper & Reynolds and Lincoln D. Gardner for Plaintiff and Appellant.
*1518 Fields & Brandon, Fields & Hoffmann, Howard M. Fields and Debra Fischl for Defendants and Respondents.
OPINION
KENNARD, J.
(1) (See fn. 1.) This is an appeal from an order of dismissal[1] entered after the trial court sustained a demurrer to the first amended complaint without leave to amend. The primary issue is whether, as the trial court found, the absolute privilege of Civil Code section 47, subdivision 2 applies to certain false statements which an attorney representing a judgment creditor made to the judgment debtor.
We conclude the absolute privilege does not apply here. Therefore, the trial court erred in sustaining the demurrers on the ground of the applicability of the privilege. However, as to certain causes of action the demurrers were sustainable on other grounds. Consequently, we reverse the judgment (order of dismissal) in part, and affirm it in part.

BACKGROUND
(2) In determining the propriety of the trial court's ruling sustaining defendants' demurrer, we must accept as true those facts properly pleaded in the complaint.[2] (Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 170 [164 Cal. Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]; Jones v. Grewe (1987) 189 Cal. App.3d 950, 954 [234 Cal. Rptr. 717].) Those facts are as follows:
After obtaining a money judgment of $2,720.80 against plaintiff, defendant creditor retained the defendant law firm of Rotkin, Schmerin & McIntyre to collect on the debt.
Defendants served plaintiff, a 74-year-old widow, with a court order to appear at a judgment-debtor examination on Friday, October 24, 1986. Plaintiff made arrangements with one Fred King for transportation to the court. King, however, failed to show up, and plaintiff did not appear at the hearing. The next Monday, plaintiff called defendant law firm to explain her absence from the court hearing. She spoke to Maria Bello, a secretary. Bello *1519 told plaintiff that a bench warrant had been issued, and that it would remain in effect until plaintiff paid the law firm $1,000 on the underlying debt.
Three days later, Attorney Michael McIntyre of defendant's law firm sent plaintiff a letter stating: "Confirming my secretary's conversation with you on October 27, 1986, these offices will not recall the Bench Warrant unless it is in receipt of a cashier's check and/or money order from you in the sum of $1,000. [¶] The balance due as of this date is $2,720.82."
Believing defendant law firm's representation that the court had issued a warrant for her arrest, and knowing she could not comply with the firm's demand for payment of $1,000 so the warrant could be withdrawn, plaintiff stayed at her apartment "for the balance of the following week" awaiting arrest. As a result, she experienced "great stress, anxiety and a feeling of hopelessness at the prospect of incarceration." Plaintiff later discovered that there was no bench warrant, and that neither defendant creditor nor any member of defendant law firm had appeared at the October 24, 1986 court hearing.
In April 1987, plaintiff sued defendant law firm, its attorney Michael McIntyre, its secretary Maria Bello, and the judgment creditor. The complaint alleged causes of action for intentional and negligent infliction of emotional distress, abuse of process, and unfair debt collection practices. In June 1987, the trial court sustained defendants' demurrer to the complaint, with 30 days leave to amend. Two weeks later, plaintiff filed a first amended complaint. Defendants demurred, claiming, among other grounds, that the statements were absolutely privileged under Civil Code section 47, subdivision 2. Relying solely on the ground of privilege, the trial court sustained the demurrer without leave to amend, and ordered the action dismissed. Plaintiff appealed.

DISCUSSION

1. Sustaining the Demurrer on the Ground of Absolute Privilege

Subdivision 2 of Civil Code section 47 affords an absolute privilege to a publication made in a "judicial proceeding." The Legislature enacted this privilege in 1872 as part of a statutory scheme on defamation, which is defined, in part, as a "false and unprivileged publication." (Civ. Code, §§ 45 [libel] and 46 [slander]; Block v. Sacramento Clinical Labs., Inc. (1982) 131 Cal. App.3d 386, 389 [182 Cal. Rptr. 438].) (3) The purpose underlying the privilege was "to afford litigants the utmost freedom of access to the courts to secure and defend their rights without fear of being harassed by *1520 actions for defamation." (Albertson v. Raboff (1956) 46 Cal.2d 375, 380 [295 P.2d 405].)
For the next 84 years, the defense of privilege remained limited to defamation proceedings. Then, in 1956, the state Supreme Court applied the privilege to defeat an action for disparagement of title based on the filing of a lis pendens by a defendant who allegedly knew he had no right to a lien or an interest in the plaintiff's real property. (Albertson v. Raboff, supra, 46 Cal.2d 375, 379.) The Albertson court explained that "`the effect of a lis pendens is to give constructive notice of all the facts apparent upon the face of the pleadings,'" and therefore "the recordation of a notice of lis pendens is in effect a republication of the pleadings." Since the publication of the pleadings was "unquestionably clothed with absolute privilege," the republication thereof by the recording of the notice of lis pendens was similarly privileged. (Id. at p. 379.) In holding that the absolute privilege attaches if a publication "has a reasonable relation to the action and is permitted by law," the Albertson court noted that the recordation of a lis pendens is permitted by law and, like any other document filed in a court proceeding, it has a reasonable relation to the action. (Id. at p. 381.)
(4) The absolute privilege now applies to "virtually all other causes of action, with the exception of an action for malicious prosecution."[3] (Ribas v. Clark (1985) 38 Cal.3d 355, 364 [696 P.2d 637, 49 A.L.R.4th 417].) When asserted as a defense, the privilege directly affects liability. In this respect, it differs from evidentiary privileges, which operate by excluding evidence. (Fuhrman v. California Satellite Systems (1986) 179 Cal. App.3d 408, 419 [231 Cal. Rptr. 113]; Block v. Sacramento Clinical Labs, Inc., supra, 131 Cal. App.3d 386, 389.)
The absolute privilege of Civil Code section 47, subdivision 2 applies to judges and other official officers, attorneys, parties, jurors, and witnesses, even when their testimony is allegedly perjured or malicious. (Portman v. George McDonald Law Corp. (1979) 99 Cal. App.3d 988, 990 [160 Cal. Rptr. 505]; Bradley v. Hartford Acc. & Indem. Co. (1973) 30 Cal. App.3d 818, 824-825 [106 Cal. Rptr. 718].) "`The resulting lack of any really effective civil remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability *1521 for what they say.'" (Kachig v. Boothe (1971) 22 Cal. App.3d 626, 641 [99 Cal. Rptr. 393].)
(5) To fall within the privilege, a communication must meet these four requirements: (1) it was made in a judicial proceeding;[4] (2) it had some connection to the action; (3) it was made to achieve the purpose of the litigation; and (4) it involved litigants or other participants authorized by law. (Walsh v. Bronson (1988) 200 Cal. App.3d 259, 269 [245 Cal. Rptr. 888]; Financial Corp. of America v. Wilburn (1987) 189 Cal. App.3d 764, 772-773 [234 Cal. Rptr. 653]; Chen v. Fleming (1983) 147 Cal. App.3d 36, 41 [194 Cal. Rptr. 913]; Portman v. George McDonald Law Corp., supra, 99 Cal. App.3d 988, 990; Bradley v. Hartford Acc. Indem. Co., supra, 30 Cal. App.3d 818, 825.) When a communication meets these requirements, the privilege is absolute; that is, it is unaffected by the presence of malice. (Costa v. Superior Court (1984) 157 Cal. App.3d 673, 677 [204 Cal. Rptr. 1]; Fuhrman v. California Satellite Systems, supra, 179 Cal. App.3d 408, 419.)
(6a) In challenging the trial court's ruling, plaintiff focuses on the third requirement. She contends that, in falsely representing to her the court had issued a bench warrant for her arrest based on her failure to appear in court, defendant law firm did not make the statement to achieve the object of the litigation. Therefore, plaintiff asserts, defendants failed to satisfy the third requirement. In support, plaintiff cites Kinnamon v. Staitman & Snyder (1977) 66 Cal. App.3d 893 [136 Cal. Rptr. 321].
In Kinnamon, the defendant attorneys, in attempting to collect on a debt which the plaintiff owed their client, sent the plaintiff a letter saying that issuing a check with insufficient funds, as the plaintiff had done, was a misdemeanor and that they would file a criminal complaint against the plaintiff. The latter sued the defendants for intentional infliction of emotional distress. The trial court sustained the defendants' demurrer, and ordered the action dismissed. On appeal, the court reversed, holding that the absolute privilege of Civil Code section 47, subdivision 2 was inapplicable to the attorney's conduct. Citing rule 7-104 of the California Rules of Professional Conduct,[5] the court said: "The threat by an attorney to present criminal charges in order to obtain an advantage in a civil action is one which the Rules of Professional Conduct proscribe.... The threat thus cannot serve *1522 the purpose of litigation. It is a cause for discipline of the attorney [citations], a proposition totally inconsistent with a privileged status." (66 Cal. App.3d at p. 897.)
Here, the creditor had obtained a money judgment against plaintiff. The remaining step was collection on the judgment. To accomplish that, defendant law firm, acting on behalf of the creditor, obtained a court order requiring the judgment debtor (plaintiff) to appear before the court to provide information to aid in the enforcement of the judgment. (Code Civ. Proc., § 708.110.)
Since the purpose of the court hearing defendants had requested was to have the court determine (based on information plaintiff was to furnish at the hearing) whether plaintiff had any assets to satisfy the judgment, it cannot be said it was to "serve the purpose of litigation" that defendant attorney falsely told plaintiff that the court had issued a bench warrant as a result of her failure to appear, and that the warrant was to remain in effect until plaintiff's payment of $1,000 in partial satisfaction of the underlying debt. (Kinnamon v. Staitman & Snyder, supra, 66 Cal. App.3d 893, 897.) Nor can it be said that, in holding the absolute privilege inapplicable to the statements here, we are depriving defendants of freedom of access to the courts to secure and defend their rights, which is the public policy underlying the privilege. (Albertson v. Raboff, supra, 46 Cal.2d 375, 380; Lerette v. Dean Witter Organization, Inc. (1976) 60 Cal. App.3d 573, 576 [131 Cal. Rptr. 592].) The complaint alleged that defendants had made no appearance at the court hearing they had requested.
It appears affirmatively from the complaint that the purpose of defendant attorney's extrajudicial statements was to deceive plaintiff and thus obtain an advantage over her. In this respect, the attorney's conduct was far more serious than the conduct of the attorneys in Kinnamon. Though the attorneys' conduct in Kinnamon was unethical, it was not criminal. Here, on the other hand, the attorney's blatantly false statements were not only unethical, they also appear to be a criminal violation. Business and Professions Code section 6128 provides in relevant part: "Every attorney is guilty of a misdemeanor who ... [¶] (a) [Is] guilty of any deceit or collusion, or consent to any deceit or collusion, with intent to deceive the court or any party." (Italics added.)
Defendants' reliance on O'Neil v. Cunningham (1981) 118 Cal. App.3d 466 [173 Cal. Rptr. 422], is misplaced. There, the court applied the absolute privilege to allegedly defamatory statements made "to achieve the object of the [malpractice] litigation, namely, to settle it." (Id. at p. 475.) (7) The settlement of a claim is a "well established legal practice." (Lerette v. Dean *1523 Witter Organization, Inc., supra, 60 Cal. App.3d 573, 577.) The Lerette court explained: "As any competent attorney is aware, access to the courts is not an end in itself but only one means to achieve satisfaction for a client. If this can be obtained without resort to the courts  even without the filing of a law suit  it is incumbent upon the attorney to pursue such a course of action first." (Ibid.)
(6b) In contrast, here defendant attorney did not make the statements at issue while attempting a settlement. After telling plaintiff the bench warrant would remain in effect until she paid $1,000 on the underlying debt, he specifically set forth the entire amount she still owed.
For the reasons set forth above, we conclude defendant attorney did not make the false statements to achieve a purpose of the litigation, the third requirement of the test we discussed earlier.[6] Therefore, the absolute privilege of Civil Code section 47, subdivision 2 does not apply.

2. Sustaining the Demurrer on Grounds Other Than Absolute Privilege

The applicability of the absolute privilege was the sole ground on which the trial court sustained defendants' demurrer without leave to amend. *1524 (8) However, "it is the validity of the court's action in sustaining the demurrer which is reviewable and not the court's statement of reasons for its action." (Franchise Tax Board v. Firestone Tire & Rubber Co. (1978) 87 Cal. App.3d 878, 883 [151 Cal. Rptr. 460]; Fuhrman v. California Satellite Systems, supra, 179 Cal. App.3d 408, 419.) We must therefore determine whether the trial court could properly have sustained the demurrer on any other grounds asserted by defendants. (Ibid.) In doing so, we are mindful of the statutory mandate that we must liberally construe the allegations of a complaint, "with a view to substantial justice between the parties." (Code Civ. Proc., § 452.)

a. Intentional Infliction of Emotional Distress

Plaintiff's first cause of action alleges the intentional infliction of emotional distress. (9) The elements of this tort are: (1) outrageous conduct by the defendant; (2) the defendant's intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering of extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (Davidson v. City of Westminster (1982) 32 Cal.3d 197, 209 [185 Cal. Rptr. 252, 649 P.2d 894]; Wallis v. Superior Court (1984) 160 Cal. App.3d 1109, 1119-1120 [207 Cal. Rptr. 123].)
Conduct is outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (Davidson v. City of Westminster, supra, 32 Cal.3d 197, 209.) (10) Here, the first amended complaint sufficiently alleged outrageous conduct by defendant attorney in making the false statements. (See Kinnamon v. Staitman & Snyder, supra, 66 Cal. App.3d 893, 896.) The complaint further adequately alleged defendants' intention of causing emotional distress, and plaintiff's suffering of emotional distress as a result of defendants' acts. (Ibid.; Wallis v. Superior Court, supra, 160 Cal. App.3d 1109, 1120.) Assuming the allegations of the complaint to be true, as we must, we hold the trial court erred in sustaining defendants' demurrer to the cause of action for intentional infliction of emotional distress.

b. Negligent Infliction of Emotional Distress

Plaintiff's second cause of action alleges the negligent infliction of emotional distress. (11) This tort is not an independent tort; it is the tort of negligence, involving the usual duty and causation issues. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 838, p. 195.) In alleging this cause of action, plaintiff has incorporated her allegations as to intentional infliction of emotional distress, including the assertion that defendants knew *1525 plaintiff was "a widow of 74 years of age and particularly susceptible to emotional distress." In addition, plaintiff alleges that defendants "negligently ... failed to exercise reasonable and ordinary care in determining whether or not a bench warrant had in fact been issued ... when in truth and fact no bench warrant had been issued, and Defendants had no reasonable basis for believing that one had been issued." As a result, plaintiff asserts, she suffered severe emotional distress.
(12) A duty arises when the risk is foreseeable. (Dillon v. Legg (1968) 68 Cal.2d 728, 739-740 [69 Cal. Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; Accounts Adjustment Bureau v. Cooperman (1984) 158 Cal. App.3d 844, 846 [204 Cal. Rptr. 881].) (13a) In liberally construing plaintiff's allegations, as we must, we conclude the complaint sufficiently alleges the reasonable foreseeability by defendant attorney that plaintiff, a 74-year-old widow, would suffer severe emotional distress from defendant's false representation directly to plaintiff that the court had issued a bench warrant for plaintiff's arrest, a representation which plaintiff, a lay person, had every reason to believe was true. (Ochoa v. Superior Court (1985) 39 Cal.3d 159, 172 [216 Cal. Rptr. 661, 703 P.2d 1]; Molien v. Kaiser Foundation Hospitals (1980) 27 Cal.3d 916, 923, 930 [167 Cal. Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].)
However, citing Weaver v. Superior Court (1979) 95 Cal. App.3d 166 [156 Cal. Rptr. 745], defendants argued in their demurrer that, as the representative of the judgment creditor, defendant attorney did not owe plaintiff, an adversary, any duty of care. (14) Though an attorney may not have a duty to protect the interests of an adverse party (Schick v. Bach (1987) 193 Cal. App.3d 1321, 1330 [238 Cal. Rptr. 902]), as an officer of the court he does have a duty "to deal honestly and fairly with adverse parties and counsel" (Wasmann v. Seidenberg (1988) 202 Cal. App.3d 752, 756 [248 Cal. Rptr. 744]); Bus. & Prof. Code, § 6128). A violation of the statute cited implies a breach of the duty of care. (Evid. Code, § 669; BAJI (7th ed.) No. 3.45.) (15) However, the statute "is merely an evidentiary fact which need not be pleaded." (4 Witkin, Cal. Proc. (3d ed. 1985) Pleading, § 535, p. 567; Opitz v. Schenk (1918) 178 Cal. 636, 638-639 [174 P. 40].) (13b) Thus, plaintiff's failure to allege a violation of the statute is immaterial. It was sufficient to generally allege negligence, as she did. (Ibid.) The trial court, therefore, erred in sustaining the demurrer.

c. Abuse of Process

(16) To state a cause of action for abuse of process, the tort alleged in the third cause of action, a plaintiff must allege (1) the defendant's ulterior motive in using the process, and (2) the use of the process in an unlawful manner. (5 Witkin, Cal. Proc. (3d ed. 1985) Pleading, § 709, p. 158.) As the *1526 state Supreme Court held in Spellens v. Spellens (1957) 49 Cal.2d 210, 231 [317 P.2d 613]: "`"The gist of the action for abuse of process lies in the improper use of process after it is issued. To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough."'" (Italics in original.)
(17) Process has been defined as "`a means whereby a court compels a compliance with its demands.'" (Meadows v. Bakersfield S & L Assn. (1967) 250 Cal. App.2d 749, 753 [59 Cal. Rptr. 34]; Woodcourt II Limited v. McDonald Co. (1981) 119 Cal. App.3d 245, 251-252 [173 Cal. Rptr. 836].) (18) The mere giving of notice of some proceeding is not "process" for the purpose of the tort at issue. (See Woodcourt II Limited v. McDonald Co., supra, at p. 252; Meadows v. Bakersfield S & L Assn., supra, at p. 753; Thornton v. Rhoden (1966) 245 Cal. App.2d 80, 94 [53 Cal. Rptr. 706, 23 A.L.R.3d 1152].)
(19) Plaintiff does not allege defendants' false notice to her that the court had issued a bench warrant constituted "process" as that term is used in the tort of abuse of process. She merely makes a conclusionary allegation that, in falsely telling her the court had issued a bench warrant, defendants "misused the order for appearance of judgment debtor." At issue, however, is not the court order for plaintiff's appearance at the judgment-debtor examination, but the false representation by defendants that the court had issued a bench warrant. In making that false statement, defendants did not take any action pursuant to the authority of the court. Thus, there was no abuse of any judicial process. (See Woodcourt II Limited v. McDonald Co., supra, 119 Cal. App.3d 245, 252; Meadows v. Bakersfield S. & L. Assn., supra, 250 Cal. App.2d 749, 753.) Since plaintiff has failed to state a cause of action for abuse of process, the sustaining of defendants' demurrer as to that tort was proper.
(20) Plaintiff's fourth cause of action alleges that, in telling her "nonpayment of her debt would result in her arrest when in fact such action was not contemplated and not permitted by law," defendants violated the Fair Debt Collection Practices Act, particularly subdivision (e) of Civil Code section 1788.10. However, the act applies only to "debt collectors"; it specifically exempts attorneys from its coverage. (Civ. Code, § 1788.2, subd. (c).) Here, the complaint shows on its face that defendant attorney was not a "debt collector" within the meaning of the act. No amendment to the complaint could establish otherwise. Therefore, the trial court properly sustained defendants' demurrer to the fourth cause of action without leave to amend. (Fuhrman v. California Satellite Systems, supra, 179 Cal. App.3d 408, 429.)

*1527 DISPOSITION
We reverse that portion of the judgment (order of dismissal) sustaining defendants' demurrer to the first cause of action for intentional infliction of emotional distress, and the second cause of action for negligent infliction of emotional distress. As to the third and fourth causes of action, we affirm the judgment. The parties are to bear their own costs on appeal.
Ashby, Acting P.J., and Boren, J., concurred.
A petition for a rehearing was denied January 30, 1989, and respondents' petition for review by the Supreme Court was denied March 16, 1989.
NOTES
[1] The order of dismissal constitutes a judgment from which an appeal lies. (Code Civ. Proc., §§ 581d and 904.1; Chauncey v. Niems (1986) 182 Cal. App.3d 967, 971 [227 Cal. Rptr. 718].)
[2] A demurrer tests the legal sufficiency of a complaint. "[I]t does not admit contentions, deductions or conclusions of fact or law alleged therein." (Daar v. Yellow Cab Co. (1967) 67 Cal.2d 695, 713 [63 Cal. Rptr. 724, 433 P.2d 732].)
[3] In Albertson v. Raboff, supra, 46 Cal.2d 375, 382, the state Supreme Court gave this explanation for the exception: "[T]he fact that a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for malicious prosecution in a proper case. The policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied."
[4] The communication may be made outside a courtroom, since "many portions of a `judicial proceeding' occur outside of open court," such as settlement negotiations. (Asia Investment Co. v. Borowski (1982) 133 Cal. App.3d 832, 842 [184 Cal. Rptr. 317, 30 A.L.R.4th 561].) The communication may be made even "preliminary to a proposed judicial proceeding." (Fuhrman v. California Satellite Systems, supra, 179 Cal. App.3d 408, 420.)
[5] Rule 7-104 provides in pertinent part: "A member of the State Bar shall not threaten to present criminal, administrative or disciplinary charges to obtain an advantage in a civil action...."
[6] In Bradley v. Hartford Acc. Indem., Co., supra, 30 Cal. App.3d 818, 826, the court emphasized that the absolute privilege should be applied only if the challenged publication was made "in furtherance of the litigation and to promote the interest of justice." (Italics in original.) Among the decisions which have applied the Bradley test are Earp v. Nobmann (1981) 122 Cal. App.3d 270 [175 Cal. Rptr. 767] [notifying the lending bank and the prospective purchaser of real property in writing of a claim of title to the property after the expungement of a lis pendens]; Barbary Coast Furniture Co. v. Sjolie (1985) 167 Cal. App.3d 319 [213 Cal. Rptr. 168] (hg. denied) [misrepresenting the financial worth of a company to the bankruptcy court to achieve personal business goals]; and Fuhrman v. California Satellite Systems, supra, 179 Cal. App.3d 408 (hg. denied) [the defendant's attorney threatened in writing to sue the plaintiff, without a good faith intention of doing so].

Under the Bradley test, the absolute privilege would not apply to the statements here. Falsely telling plaintiff the court had issued a bench warrant, which was to remain in effect until plaintiff's payment of $1,000 in partial satisfaction of the debt she owed, can hardly be considered conduct which promotes "the interest of justice." (Bradley v. Hartford Acc. & Indem. Co., supra, 30 Cal. App.3d 818, 826.)
Though, as we noted above, some decisions have followed Bradley, others have criticized Bradley for requiring that the statement be made not only to further the litigation but also to promote the interest of justice. (See e.g. McClatchy Newspapers, Inc. v. Superior Court (1987) 189 Cal. App.3d 961, 969, 971 [234 Cal. Rptr. 702] (hg. denied); O'Neil v. Cunningham, supra, 118 Cal. App.3d 466, 475.)
On October 27, 1988, the state Supreme Court granted a petition for review in Silberg v. Anderson, the most recent published case to follow Bradley. Because of the grant of review in Silberg, we have relied primarily on the reasons set forth in the main body of this opinion, rather than on the Bradley test, in concluding that the absolute privilege does not apply to the statements in this case.