968 F.2d 1220
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sandra P. HEAGERTY; Heagerty Family Trust, Plaintiffs-Appellants,
v.
HOME SAVINGS OF AMERICA, F.A., a corporation; Serrano
Reconveyance Co., a California corporation; et
al., Defendants-Appellees.
 No. 91-15754.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 8, 1992.
Decided July 1, 1992.
 
 Before ALARCON, HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Sandra Heagerty and the Heagerty Family Trust appeal the district court's dismissal and entry of partial summary judgment against them on their action under the Truth in Lending Act with pendent state claims. We affirm.
 
 
 3
 * Heagerty first argues that the district court erred by granting summary judgment to Home Savings of America ("Home") on her claims for intentional and negligent misrepresentation. In her complaint, Heagerty alleged that Home
 
 
 4
 made the following representations (among others) to Sandra P. Heagerty and her husband: that a thorough credit investigation revealed that Mr. and Mrs. Robert Catalano (hereinafter referred to as "Catalanos") were qualified as co-borrowers and had the financial ability to repay the loan; and Defendants represented that the Catalanos were required to be placed on the title to the property.
 
 
 5
 The only evidence to which Heagerty points is the letter from Home offering to make a loan to the Heagertys and the Catalanos.
 
 
 6
 Under California law, Heagerty must prove five elements to state a claim for intentional fraud: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; (5) resulting damages. Cicone v. URS Corp., 227 Cal.Rptr. 887, 890 (Cal.App.1986). To prove negligent misrepresentation, all of the preceding elements except for knowledge of falsity must be proven. Id. at 898.
 
 
 7
 The district court acted correctly by holding, as a matter of law, that no misrepresentation was made by the commitment letter. The letter simply does not contain an assertion that the Catalanos were creditworthy beyond the fact that Home was willing to extend a secured loan to the Catalanos and the Heagertys. Home's only assertion was that Home was willing to loan money to the Catalanos and the Heagertys on specified terms, not that the Catalanos were likely to repay the loan. It may well be true that the Heagertys relied on Home's willingness to extend the loan to the Catalanos as an indicia of the Catalanos' creditworthiness, but that does not mean that Home represented anything to the Heagertys beyond its own willingness to extend a loan. The district court thus acted properly by granting summary judgment to Home on these claims.
 
 II
 
 8
 * Heagerty next argues that the district court improperly granted summary judgment against her on her claim under the Truth in Lending Act (TILA). Heagerty first argues that she has a claim under 15 U.S.C. § 1635(a).[1] It is uncontested that the property was not Heagerty's principal dwelling at the time that the transaction was consummated. Section 1635(a) is therefore facially inapplicable to the transaction at hand. Heagerty can state no claim for relief.
 
 B
 
 9
 Heagerty next argues that the district court erred when it ruled that her claim under 15 U.S.C. § 1638(a) was barred by the statute of limitations. 15 U.S.C. § 1640(e) provides that "[a]ny action under this section may be brought ... within one year from the date of the occurrence of the violation." Because Heagerty did not file her action until 1990, she can only escape the bar of the statute if she can argue either that the violation continued until sometime after the loan transaction was consummated or that the statute was tolled.
 
 
 10
 This circuit has rejected the application of a continuing violation theory to the TILA statute of limitations but does recognize equitable tolling. King v. California, 784 F.2d 910, 915 (9th Cir.1986), appeal dismissed and cert. denied, 484 U.S. 802 (1987). We made it clear in King that fraudulent concealment and equitable tolling turn on findings of fact by the district court. Id.
 
 
 11
 The district court correctly determined that Home's evidence showed that Heagerty could reasonably discover any TILA violation in June 1989 at the very latest, and Heagerty failed to establish a genuine issue as to this fact. Home produced the entire loan file at that time. Although Heagerty claims that the complete file was not produced until 1990, she fails to indicate which items allegedly missing in 1989 denied her a reasonable opportunity to discover any TILA violations. At oral argument in the district court, Heagerty's counsel stated the missing documents were "notations and memorandums that had not been there before. There [were] a full appraisal and various other documents." Heagerty had to show, pursuant to Federal Rule of Civil Procedure 56(c), that affidavits and other materials in the file established a genuine issue of material fact as to whether the claimed TILA violation was discoverable prior to one year before she filed her lawsuit. She received the Home file in 1989. She does not dispute that it included the Regulation Z disclosures upon which she claims her signature was forged. Heagerty could point to no evidence to support her accusation that the Home file was materially incomplete, so she had at that time a "reasonable opportunity to discover the fraud or nondisclosures that form the basis" of her action. Id. at 910. Because Heagerty did not file her complaint until December 1990, her claims for damages under TILA were time barred.
 
 III
 
 12
 Heagerty next argues that the district incorrectly granted summary judgment to Home on her claims for infliction of emotional distress. She based her claims upon her allegation that Home "failed to provide notice of payment due and notices of late payments, lack of notice of insurance deficiency and extra charges resulting from said defeciency [sic]; and refus[ed] to communicate payment information and loan status upon request of Plaintiff." Heagerty's grievance here is that Home failed to provide her with information about her loan over the telephone.
 
 
 13
 * Heagerty argues that the district court erred by holding that the statute of limitations barred her claims for infliction of emotional distress. An action for infliction of emotional distress under California law must be brought within one year. Cal.Civ.Proc.Code § 340(3) (West 1982); Kiseskey v. Carpenters' Trust for S.Cal., 192 Cal.Rptr. 492, 497 (Cal.App.1983). The statute begins running when the tortfeasor's conduct first causes severe emotional distress. Kiseskey, 192 Cal.Rptr. at 498. Neither in Heagerty's complaint nor in her declaration does Heagerty indicate when the emotional distress allegedly manifested itself. At oral argument in the district court, Heagerty's counsel argued that the emotional distress first occurred in April 1990 without pointing to any evidence in the record. The district court stated in its order that Heagerty offered "no factual support for the claim that the severe emotional distress began in April 1990," and held that she had therefore failed to prove that the statute did not bar her claim.
 
 
 14
 Heagerty's declaration, however, focuses exclusively on conduct occurring in "the spring of 1990" and states that "[t]hese acts of outrageous conduct have caused me to suffer severe nervousness, sleeplessness, depression, and other similar ailments." Thus, the district court erred by holding that Heagerty had presented no evidence that she suffered severe emotional distress as the result of Home's actions within one year of filing her complaint.
 
 B
 
 15
 The district court was correct, however, that Heagerty could not state a claim for intentional infliction of emotional distress as a matter of law. To state such a claim, Heagerty must have alleged "conduct so extreme and outrageous 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " Alcorn v. Anbro Eng'g, Inc., 468 P.2d 216, 219 n. 5 (Cal.1970) (quoting Restatement (Second) of Torts § 46 comment d). Heagerty did not allege that Home employees engaged in such conduct, but merely that the employees refused to release financial information over the telephone. Moreover, Heagerty did not allege that Home refused to provide with her with the information after she wrote to Home or personally visited a Home office.
 
 
 16
 The cases upon which Heagerty relies state facts far more egregious than a refusal to provide financial information over the telephone. In Fletcher v. Western Nat'l Life Ins. Co., 89 Cal.Rptr. 78, 89 (Cal.App.1970), the court held that an insurance company that denied a disabled man's claim for benefits without any good faith basis for doing so acted outrageously. In Alcorn, plaintiff's employer subjected him to verbal abuse using derisive racial insults and fired the plaintiff. Alcorn, 468 P.2d at 217.
 
 
 17
 Kruse v. Bank of America, 248 Cal.Rptr. 217 (Cal.App.1988), cert. denied, 488 U.S. 1043 (1989), perhaps provides the best prediction of how California courts would evaluate Heagerty's claim. In Kruse, the court reversed a jury verdict awarding Kruse $100,000 in damages for intentional infliction of emotional distress. Id. at 234. Kruse's claim was predicated on statements made by a bank official (Bunch) to Jewell. Jewell had taken out loans from the bank and then re-loaned the money to Kruse's son in order to keep Kruse's family business afloat. Id. at 220-23. Bunch encouraged Jewell to liquidate the deeds of trust he held on Kruse's property. Id. at 235. The court held that the bank was entitled to encourage Jewell to liquidate Kruse's property because the Bank was pursuing its own economic interests. Id. at 234-35. The court appears to have rested its holding on the fact that "no threats or words of abuse were directed toward the plaintiff" and that Kruse had no direct contact with Bank officials. Id. at 235. Bunch had made rude comments, however, to Jewell and Kruse's son and daughter. Nonetheless, the court wrote that "[w]hile Bunch's heartless and insensitive remarks merit opprobrium, they do not qualify as the kind of 'outrageous' conduct necessary to support an action for intentional infliction of emotional distress." Id.
 
 
 18
 We do not think that California courts would find the conduct alleged by Heagerty to be outrageous, beyond all bounds of decency, and intolerable in a civilized society. The district court correctly dismissed this claim.
 
 C
 
 19
 The district court also acted properly in dismissing Heagerty's claim for negligent infliction of emotional distress. In California, negligent infliction of emotional distress "is not an independent tort; it is the tort of negligence, involving the usual duty and causation issues." Carney v. Rotkin, Schmerin & McIntyre, 254 Cal.Rptr. 478, 484 (Cal.App.1988). In order for Heagerty to state a claim under this doctrine, she must allege that Home violated some duty of care to her. For example, in Carney, plaintiff alleged that defendant law firm had negligently represented that the court had issued a bench warrant for plaintiff's arrest. The court held that the attorneys in the firm had a duty to "deal honestly and fairly with adverse parties and counsel." Id. at 485 (internal quotation omitted). Taking plaintiff's allegations as true, the court held that she had stated a claim. Id.
 
 
 20
 The commitment letter provides no basis for finding a duty on the part of Home, and Heagerty has cited no authority providing that a bank has a duty to provide information about a loan over the telephone. Because Heagerty has not stated a claim even assuming her factual allegations to be true, the district court correctly dismissed this cause of action.
 
 IV
 
 21
 Finally, Heagerty argues that the district court erred by denying her leave to amend her complaint. Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the other party."
 
 
 22
 Neither a motion to dismiss nor a motion for summary judgment constitutes a responsive pleading. Jackson v. American Bar Ass'n, 538 F.2d 829 (9th Cir.1976) (motion for summary judgment not a responsive pleading); Nolen v. Fitzharris, 450 F.2d 958, 958-59 (9th Cir.1971) (per curiam) (motion to dismiss not a responsive pleading); Griffin v. Locke, 286 F.2d 514, 515 (9th Cir.1961) (same). The district court thus erred by denying Heagerty her first opportunity to amend her complaint. We see no need to remand, however, because it would be a futile gesture. Heagerty's claims are utterly without merit legally and factually. See Wilson v. American Trans Air, Inc., 874 F.2d 381, 392 (7th Cir.1989). "Under these circumstances, we cannot say that the district court abused its discretion when it denied this eleventh hour bid to breathe new life into the litigation." Id.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 1635(a) provides:
 Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor ... of his intention to do so.