Filed 12/4/15  Ryan v. Allione CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES F. RYAN,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PAUL R. ALLIONE,<br><br>    Defendant and Appellant. | G050104<br><br>(Super. Ct. No. 30-2013-00680594)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

Theis Law Group and Bryan K. Theis for Defendant and Appellant.

James F. Ryan, in pro. per., for Plaintiff and Respondent.

\*        \*        \*

Plaintiff James F. Ryan sued defendants Eric V. Holt and Paul R. Allione. Ryan's complaint alleged 16 causes of action, including defamation by slander, extortion, and abuse of process. Allione moved to strike these counts under Code of Civil Procedure section 425.16 (hereafter section 425.16). The trial court granted the motion as to defamation by slander and abuse of process, finding each cause of action barred by the litigation privilege. (Civ. Code, § 47, subd. (b).) However, the court denied the motion as to the extortion count.

Allione appeals from the latter portion of the order. He argues the record fails to establish the threatening statements allegedly made by him constitute extortion as a matter of law, and Ryan cannot prevail on this claim because the statements are protected by the litigation privilege. We agree with Allione's first assertion, but conclude Ryan satisfied his burden of stating and substantiating a legally sufficient claim. Therefore, we affirm the trial court's order.

FACTS AND PROCEDURAL BACKGROUND

Both Ryan and Allione are attorneys. In 2009, Ryan agreed to represent Holt in a pending lawsuit. However, the parties did not execute a formal retainer agreement. Rather, the terms of Ryan's representation of Holt were memorialized in a series of e-mails between Ryan and a Nevada lawyer described as "Holt's . . . business attorney." Ryan alleged the e-mails established his fee would be "a 25 [percent] contingency share of the final judgment/settlement in the case." Holt and Allione claimed the retainer agreement authorized a reduced hourly fee capped at $12,000, "plus 25 [percent] of the net" recovery other than the value of the patents for a device the ownership of which was one of the matters at issue in the lawsuit.

In late 2011, a settlement was reached in the action. The opposing party agreed to transfer ownership of both the patents and a gold mine to Holt, plus pay him

2

$30,000 in cash. Ryan acknowledged receiving the $30,000 payment and documented his efforts to have title to the patents and the gold mine placed in Holt's name and asserted that he informed Holt's Nevada attorney of these events. According to Ryan, Holt said he planned to make money by selling interests in the gold mine, but thereafter never contacted Ryan. Ryan claimed he promised to send Holt 75 percent of the settlement funds upon receipt of a 25 percent interest in both the gold mine and patents.

According to Holt's and Allione's declarations, Ryan failed to contact Holt about the settlement. Allione offered to assist Holt in resolving the fee dispute, initially contacting Ryan by telephone. Ryan and Allione gave very different accounts about the details of their conversations.

On June 6, Allione personally visited Ryan at what he claims he thought was Ryan's office, but in fact was Ryan's residence. Allione and Ryan also provided contradictory versions of what occurred during this encounter.

In his complaint, Ryan alleged Allione appeared at his front door "screaming hysterically 'Give me my money,'" and physically assaulted him in an unsuccessful effort to enter his residence. "Allione[] attempted to force Ryan to pay him $22,500.00" of the settlement proceeds, declaring "threateningly and unequivocally, 'You won't be a lawyer when I am through with you.'" Ryan's declaration opposing Allione's motion to strike added the accusation that when he refused to give Allione the balance of the settlement proceeds, Allione accused Ryan of theft, took out his cell phone and tried to call the police "to . . . arrest[ Ryan] for stealing money." According to Ryan, Allione was unable to complete the call.

Allione's declaration in support of his motion to strike acknowledged accusing Ryan of theft and attempting to call the police, but asserted it resulted from Ryan's refusal to produce his trust account bank statements. Allione claimed he terminated the phone call when Ryan expressed a willingness to cooperate. According to

3

Allione, he "concluded the interaction by telling Ryan that he had until the next day to produce the accounting records."

The dispute remained unresolved. On June 14, Holt, assisted by Allione, filed a complaint against Ryan with the State Bar of California.

In February 2013, while the State Bar matter was still pending, Allione sent Ryan a letter. The letter described Ryan's refusal to release 75 percent of the settlement funds as "conversion by a person in a fiduciary position," and noted "[i]t seems the State Bar is gearing up for a trial on the complaint against you," with "Holt and [Holt's Nevada attorney] . . . expected to be available as witnesses." Then, after setting forth the terms of a proposed settlement, the letter continued: "While it is unethical to promise the withdrawal of a state bar complaint as part of a settlement between counsel and client, I can assure you that if the above terms are boiled down to a formal writing, fully executed, and money/documents exchanged, I will strongly encourage [Holt] to withdraw his complaint. I am confident that he will follow my lead on that."

A few days later, the State Bar terminated its review of Holt's complaint without a hearing or taking any action on the fee dispute.

In his declaration opposing Allione's motion to strike, Ryan claimed that one evening shortly after the state bar matter ended, "Holt[] or some hoodlums that Holt hired, arrived at the front door of my residence and violently pounded on the door for several minutes, took a 5 minute break, and then again violently pounded on the front door for several minutes, almost breaking it in . . . ."

Ryan filed this action against both Allione and Holt. The ninth count alleged a cause of action for civil extortion based on the June 6 encounter, Allione's February 13 settlement letter, and the door pounding incident. Allione moved to strike this count and those alleging defamation by slander and abuse of process. The trial court granted the motion as to the latter two counts, but denied it as to the extortion cause of action. Noting "extortion, according to *Flatley[ v. Mauro* (2006) 39 Cal.4th 299], is not

4

constitutionally protected speech," the court concluded "the threat appears to be one dealing with filing the charges." Also, citing portions of plaintiff's opposing declaration, the court stated "at this juncture" it "doesn't weigh the evidence but just accepts the evidence . . . favorable to the plaintiff as true . . . ."

## DISCUSSION

*1. Scope of Review*

This case involves an appeal from the portion of an order that denied an anti-SLAPP motion under section 425.16 as to a cause of action for extortion.

Section 425.16, subdivision (b)(1) authorizes a court to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." When ruling on an anti-SLAPP motion a court "engage[s] in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

To satisfy the first step, "[t]he moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67; Code Civ. Proc., § 425.16, subds. (b)(1) & (e).) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself*

5

have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

If the moving defendant satisfies the first prong, the burden shifts to the plaintiff to establish a probability of prevailing on the claim. "[T]o establish the requisite probability of prevailing [citation], the plaintiff need only have '"stated and substantiated a legally sufficient claim."' [Citations.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89.)

"We review an order granting or denying a motion to strike under section 425.16 de novo." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) "'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."'" (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 326.)


*2. Application*

Extortion is defined as "the obtaining of property from another, with his consent . . . induced by a wrongful use of force or fear . . . ." (Pen. Code, § 518.) It includes "the making of threats that, in and of themselves, may not be illegal," but which "'nevertheless becomes illegal when coupled with a demand for money.'" (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 326.) Although extortion is a crime (Pen. Code, § 518), case law has recognized the existence of a civil cause of action for extortion. (*Flatley v.*

*Mauro, supra,* 39 Cal.4th at p. 326; *Fuhrman v. California Satellite Systems* (1986) 179 Cal.App.3d 408, 426 ["However denominated (e.g., extortion, menace, duress), our Supreme Court has recognized a cause of action for the recovery of money obtained by the wrongful threat of criminal or civil prosecution"], disapproved on another ground in *Silberg v. Anderson* (1990) 50 Cal.3d 205, 219.)

As the trial court noted, although the ninth cause of action in Ryan's complaint referred to several acts, the "gravamen" of the extortion claim was Allione's "threat" to file charges against Ryan unless he turned over the funds allegedly owed to Holt. In determining "whether the challenged claims arise from acts in furtherance of the defendant['s] right of free speech or right of petition," a court must "'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies,'" which is accomplished "'by identifying "[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim."'" (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 209.)

In *Flatley*, the Supreme Court affirmed the denial of a motion to strike a cause of action for extortion where the trial court found the defendant "had not satisfied his initial burden to show that his communication was protected by section 425.16." (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 311.) The court concluded "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the . . . statute to strike the plaintiff's action." (*Id.* at p. 320.)

Allione contends the same result should not apply here. He notes *Flatley* also recognized the general rule that a "'defendant does not have to "*establish* its actions are constitutionally protected under the First Amendment as a matter of law"'" to satisfy

its burden on section 425.16's first prong (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 314) and, in a footnote "emphasize[d] . . . our opinion should not be read to imply that rude, aggressive, or even belligerent prelitigation negotiations, whether verbal or written, that may include threats to file a lawsuit, report criminal behavior to authorities or publicize allegations of wrongdoing, necessarily constitute extortion." (*Id.* at p. 332, fn. 16.)

Nonetheless, several subsequent appellate decisions have found conduct supported the denial of a motion to strike under section 425.16. (*Stenehjem v. Sareen* (2014) 226 Cal.App.4th 1405, 1423-1424 [e-mail threatening to report opponent to federal authorities for submitting false billings unless he negotiated a settlement of the parties' claims]; *Mendoza v. Hamzeh* (2013) 215 Cal.App.4th 799, 807 [letter accused the plaintiff of fraud, conversion, and breach of contract and threatened to report him to prosecutorial and tax authorities unless he paid $75,000]; *Cohen v. Brown* (2009) 173 Cal.App.4th 302, 317 [in attorneys' dispute over division of fees, the defendant threatened to and then filed State Bar complaint in effort to pressure the plaintiff to immediately sign off on a settlement check].)

The facts of the present case are not as egregious as those presented in the foregoing decisions. Further, a decision that reached the opposite conclusion in this context is *Malin v. Singer* (2013) 217 Cal.App.4th 1283. There, an attorney sent a letter to a business associate of his client, accusing the latter and others of "'embezzlement, conversion and breach of fiduciary duty'" and threatening to file a lawsuit that would disclose they "had misused company resources to arrange sexual liaisons with older men." (*Id.* at p. 1288.) The trial court denied a motion to strike a cause of action for extortion, but the Court of Appeal reversed. "Singer's demand letter did not expressly threaten to disclose Malin's alleged wrongdoings to a prosecuting agency or the public at large" (*id.* at p. 1298) and "the 'secret' that would allegedly expose [Malin] and others to disgrace was inextricably tied to [the] pending complaint." (*Id.* at p. 1299.) Thus, "We see a critical distinction between Singer's demand letter, which made no overt threat to

8

report Malin to prosecuting agencies or the Internal Revenue Service, and the letters in *Flatley* and *Mendoza*, which contained those express threats and others that had no reasonable connection to the underlying dispute." (*Ibid*.)

We find this case more analogous to *Malin*, which followed the general rule recognized that "'communications preparatory to or in anticipation of the bringing of an action or other official proceeding are . . . entitled to the benefits of section 425.16.'" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; *Malin v. Singer, supra,* 217 Cal.App.4th at p. 1293 ["Ordinarily, a demand letter sent in anticipation of litigation is a legitimate speech or petitioning activity that is protected under section 425.16"].) Thus, to the extent the trial court relied on *Flatley* to deny Allione's motion to strike the extortion cause of action, we conclude it erred.

But "[o]nly a cause of action that satisfies *both* prongs of the . . . statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit— is . . . subject to being stricken under the statute." (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89; *Oasis West Realty, LLC v. Goldman, supra,* 51 Cal.4th at p. 820.) And we further conclude Ryan carried his burden of stating and substantiating a legally sufficient claim. (*Navellier v Sletten, supra,* 29 Cal.4th at p. 88.)

Allione personally contacted Ryan and, according to Ryan, demanded Ryan give him Holt's portion of the settlement proceeds. When Ryan refused to do so, Allione accused him of theft and attempted to call the police. Allione admits he accused Ryan of theft and commenced making the call, but disputes only the reason for his failure to complete the call. According to Ryan, Allione then tried to enter his apartment, demanding Ryan to "Give me my money." At this point, Allione again threatened Ryan, declaring, "'You won't be a lawyer when I am through with you.'" This conduct could be viewed as violating the Rules of Professional Conduct, which prohibits an attorney from "threaten[ing] to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." (Rules Prof. Conduct, rule 5-100(A).)

9

Citing the litigation privilege (Civ. Code, § 47, subd. (b)), Allione argues his "confrontation with Ryan" was protected activity because it was "to perform 'communications preparatory or in anticipation of bringing an action or other official proceeding.'" We disagree.

"The litigation privilege . . . provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. . . . 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.'" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) It "is . . . relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 323.) Further, "[t]he privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'" (*Action Apartment Assn., Inc. v. City of Santa Monica, supra,* 41 Cal.4th at p. 1241.)

Although not cited by Allione, a similar privilege exists for his threat against Ryan's professional license. (Bus. & Prof. Code, § 6094, subd. (a) ["Communications to the disciplinary agency relating to lawyer misconduct or disability or competence, or any communication related to an investigation or proceeding and testimony given in the proceeding are privileged, and no lawsuit predicated thereon may be instituted against any person"]; *Cohen v. Brown, supra,* 173 Cal.App.4th at p. 319 [section 6094, subdivision (a) applies to the second prong of the anti-SLAPP analysis].)

But at this stage of the lawsuit, Allione's argument is unavailing. The focus here is on the litigation privilege's third element. "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical

10

relation to, the action, i.e., that it not be extraneous to the action. A good example of an application of the principle is found in the cases holding that a statement made in a judicial proceeding is not privileged unless it has some reasonable relevancy to the subject matter of the action." (*Silberg v. Anderson, supra,* 50 Cal.3d at pp. 219-220.)

Some cases have held prelitigation communications failing to satisfy the privilege's third element are not protected by it. In *Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140, the plaintiff's former employer, sent a letter to his current employer threatening litigation over the alleged solicitation of Proton's employees and customers. The letter falsely stated the plaintiff had served time in prison for violently assaulting his wife. In the plaintiff's libel action, the Court of Appeal held "the inclusion in [the] demand letter . . . of references to appellant's criminal record falls outside of the . . . privilege" (*id.* at p. 151), noting "section 47[, subdivision] (b) does not prop the barn door wide open for any and every sort of prelitigation charge or innuendo." (*Id.* at p. 150.)

And in *Carney v. Rotkin, Schmerin & McIntyre* (1988) 206 Cal.App.3d 1513, a law firm falsely represented to the elderly plaintiff who had missed a judgment debtor examination that the trial court had issued a bench warrant for her arrest and to have the warrant recalled she would have to immediately pay the firm $1,000. The appellate court held this statement was not covered by the litigation privilege. "[D]efendant attorney did not make the statements at issue while attempting a settlement," and thus "did not make the false statements to achieve a purpose of the litigation." (*Id.* at p. 1523.)

In the present case, there was no litigation pending or contemplated at the time of the June 6 encounter. Ryan's declaration claimed Allione threatened him with both criminal prosecution and loss of his professional license as a means of forcing him to turn over the portion of the settlement proceeds from the underlying Riverside action that Allione claimed was owed to Holt. According to Ryan's version of the incident,

11

Allione's statements were more in the nature of threats than an effort to seek settlement of the fee dispute. The trial court recognized as much when she cited to the portion of Ryan's declaration recounting the June 6 encounter with Allione and noted "at this juncture the court doesn't weigh the evidence but just accepts the evidence . . . favorable to the plaintiff as true . . . ." As such, we conclude Ryan has carried his burden of establishing a probability of prevailing on the extortion cause of action.

Consequently, we conclude the trial court properly denied Allione's motion to the extent it sought to strike the extortion cause of action under section 425.16.

DISPOSITION

The order is affirmed. Respondent shall recover his costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.