Filed 4/26/13  Villanueva v. Cyprexx Services CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JUN VILLANUEVA et al., | D060860 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00086445-CU-WE-CTL) |
| CYPREXX SERVICES, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

Plaintiffs and appellants Jun Villanueva and Sharon Balverde sued defendants and respondents Cyprexx Services, LLC (Cyprexx) and attorney Tyneia Merritt after Cyprexx auctioned Villanueva's personal belongings following the nonjudicial foreclosure sale of his residence.  The trial court sustained without leave to amend the demurrer of Cyprexx and granted defendant Merritt's special motion to strike the complaint as a strategic

lawsuit against public participation (Code Civ. Proc.,[1] § 425.16, commonly known as the anti-SLAPP statute). Plaintiffs appeal from the ensuing judgments in defendants' favor. They contend their complaint states causes of action for wrongful eviction, conversion, violation of the Servicemembers Civil Relief Act (SCRA) (50 U.S.C. Appen. § 501, et seq.), replevin or claim and delivery, and unjust enrichment, and the trial court should have granted them leave to amend. They further contend the court erred in granting Merritt's anti-SLAPP motion because Merritt did not engage in protected speech, and they demonstrated a likelihood of prevailing on their SCRA cause of action. They argue the court should have granted them leave to amend to state a malicious prosecution cause of action against Merritt. We affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND

The background facts are taken from plaintiffs' verified complaint and its attached exhibits; we accept as true the properly pleaded material factual allegations together with facts that may properly be judicially noticed. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672; *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 435.)

In February 2007, Villanueva purchased a house at 626 Arroyo Seco Drive in San Diego (the Arroyo property), executing a note and deed of trust naming Plaza Home Mortgage, Inc. as the lender. Villanueva was in the military, had completed two tours of duty in Iraq, and at the time of the complaint's filing, was deployed on active duty.

_____

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

Balverde was authorized to store her personal possessions at the Arroyo property while Villanueva was away.

In July 2008, GMAC Mortgage, LLC (GMAC) acquired title to the property in a trustee's sale. In October 2008, Merritt, on behalf of GMAC, filed an unlawful detainer action (the first unlawful detainer action) against Villanueva and Does 1-100. Substitute service of the summons and complaint was effected on Balverde. That same month, Merritt executed a declaration of nonmilitary status, declaring under oath that none of the defendants in the action were in the military. In November 2008, a default judgment was entered against Villanueva and Balverde. GMAC did not execute on the judgment, and in January 2009, GMAC filed a notice of rescission of the trustee's deed upon sale. The notice states that the July 2008 foreclosure sale was conducted in error due to a failure to communicate conditions that would have warranted its cancellation.

In May 2009, Deutsche Bank National Trust Company (Deutsche Bank) acquired title to the Arroyo property in a trustee's sale, and that month Merritt served a notice to quit under section 1161a, subdivision (b)(3) on Villanueva "and all others in possession" (capitalization omitted) residing at the Arroyo property. The notice stated that the Arroyo property was purchased at a nonjudicial foreclosure sale, and demanded that Villanueva deliver possession or be subject to eviction proceedings. Service was effected by posting the notice to quit in a conspicuous place on the Arroyo property.

In July 2009, Merritt filed a verified second unlawful detainer action on behalf of Deutsche Bank, naming Balverde and Does 1-100. Deutsche Bank alleged it had purchased the Arroyo property at a trustee's sale in April 2009, and that Balverde

3

remained in possession of the premises, but failed to surrender possession within the period set forth in the notice to quit.

In September 2009, Merritt filed a request for entry of default against Balverde, and also executed another affidavit of nonmilitary status stating under oath that no defendant was in the military.

In November 2009, Merritt filed a writ of possession of the Arroyo property on behalf of Deutsche Bank. The writ states that judgment was entered on October 13, 2009. The writ of possession issued on November 5, 2009. Balverde eventually received a notice to vacate from Merritt. At some point, Deutsche Bank retained Coldwell Bank to sell the property, and Cyprexx was retained to reclaim the personal property and dispose of it.

On December 5, 2009, Balverde wrote to Merritt, provided her copies of Villanueva's deployment documents, and advised her that Villanueva was stationed in Okinawa but unreachable as he was on a special assignment in Thailand. Balverde also retained an attorney, who several days later contacted a Coldwell Bank representative, Steve Freisen, to inform him that Villanueva was deployed overseas with the military and wanted time to remove his personal possessions from the foreclosed Arroyo property. Balverde's attorney asked Coldwell Bank to refrain from entering and removing Villanueva's belongings until his return to the United States in February 2010.

In November 2009, the levying officer executed the writ of possession of the Arroyo property. Balverde's attorney contacted Cyprexx to advise them of Villanueva's military status. Balverde checked with Friesen, who told her she would have more time

4

to remove the personal property, and she consequently waited for a further response. Defendants, however, removed or had removed all of plaintiffs' personal property stored at the Arroyo property and had it sold at a public auction. In February 2010, Balverde spoke with Friesen again to ask about the status of her request, but was told that the property had been auctioned off, sold or otherwise discarded. Balverde confirmed with Cyprexx that all of her and Villanueva's personal property had been sold.

In February 2011, plaintiffs filed a verified complaint against defendants Cyprexx, Merritt, and the other entities,[2] setting forth causes of action for wrongful eviction, replevin, conversion, unjust enrichment and violation of the SCRA.

Merritt filed a special motion to strike the complaint under section 425.16. She argued all of the complaint's allegations arose out of the exercise of her right and duty to petition the court on her clients' behalf, and the statute protected even her misstatement in the declaration of nonmilitary status. She further argued none of the causes of action stated a claim because there were no allegations she had engaged in any of the injurious conduct, namely, seizing control and selling any of the personal property. Finally, Merritt argued that none of the causes of action were legally sufficient in that she had nothing to do with the trustee's sale; Villanueva had no right, title or interest in the Arroyo property at the time of Balverde's eviction; Merritt's actions were not wrongful;

---

2      Plaintiffs also named Plaza Mortgage (Plaza), GMAC, Deutsche Bank, and Coldwell Bank. Plaintiffs allege Plaza had funded Villanueva's purchase money loan; GMAC acquired title to Villanueva's property in the first trustee's sale; Deutsche Bank acquired title to Villanueva's property in the second trustee's sale; and Coldwell Bank was the real estate brokerage company of record after the sales that "maintained custody, dominion and control over" Villanueva's personal property.

5

Merritt had no legal obligation to return possession of the premises to Balverde or store Villanueva's possessions on the Arroyo property; plaintiffs never made a proper request for surrender of the personal property, which was not particularly described in the verified complaint; the SCRA did not apply to plaintiffs or provide their requested remedy; and the complaint's allegations negated any possible causation. Finally, Merritt argued that as a result of the litigation privilege of Civil Code section 47, subdivision (b)(2), plaintiffs could not establish a probability of prevailing on the merits. Merritt asked for an award of attorney fees and costs.

Merritt filed a declaration in support of her anti-SLAPP motion in which she averred that before filing the first unlawful detainer complaint on GMAC's behalf and up to November 18, 2008, when the judgment was entered for possession, she had never received any notice or communication from plaintiffs that Villanueva was a service member or on active duty.[3]

Thereafter, Cyprexx separately demurred to the verified complaint on grounds that as to all causes of action, the complaint failed to state facts sufficient to constitute a cause of action; the wrongful eviction cause of action was barred by the one-year statute of limitations; and Balverde lacked standing to assert a claim for violation of the SCRA.

In opposition to Merritt's anti-SLAPP motion, plaintiffs argued section 425.16 did not apply to speech and petitioning that was illegal as a matter of law, and the statute did

---

[3] Merritt also demurred to all of the causes of action and moved to strike all or portions of plaintiffs' verified complaint. Those matters were ruled moot after the trial court granted Merritt's anti-SLAPP motion.

6

not preempt the SCRA. They further argued they demonstrated a probability of prevailing on the merits on all of their causes of action based on a declaration filed by Merritt in opposition to Balverde's motion to vacate the underlying judgment in the second unlawful detainer action. In that declaration, Merritt averred that she did not name Villanueva in that action because when she filed it, she was "informed and believed, and continue[d] to believe, that Balverde was the only occupant of the [Arroyo property], and that Balverde was the only person who claimed a right to possess the Premises." Merritt stated that her belief was based on information she had obtained in October 2008 in the first unlawful detainer action, when Balverde filed a prejudgment claim of right to possession of the Arroyo property (§ 1174.25) by virtue of an alleged oral rental agreement between Villanueva and GMAC, which, according to Merritt, was inconsistent with any claim of possessory right on Villanueva's part.

Plaintiffs also opposed Cyprexx's demurrer. They asked for leave to file a first amended complaint; argued they had standing under the SCRA; and asserted that but for Cyprexx's "wrongful conduct," they would not have been damaged.

Following argument on the matter, the trial court granted Merritt's anti-SLAPP motion and sustained Cyprexx's demurrer without leave to amend. As to Merritt, it ruled all of the causes of action arose from Merritt's representation of clients in the unlawful detainer actions, and thus Merritt had met her initial burden to show the action was based on protected speech and petitioning activity. It further ruled plaintiffs did not show the gravamen of their complaint arose from Merritt's allegedly illegal activity; the evidence showed Merritt did not know Villanueva was in the military when she executed the

7

declaration of nonmilitary status in the first unlawful detainer action, Villanueva was not a party or indispensable party to the second unlawful detainer action, and there was no evidence Balverde was in the military at the time. Its ruling detailed why plaintiffs had not demonstrated a probability of prevailing on the merits on any of their causes of action.

As to Cyprexx, the court ruled the causes of action failed in that plaintiffs had not alleged Cyprexx (a) had any involvement in the foreclosure sale; (b) had possession of plaintiffs' personal property at the time the action was commenced; (c) did any wrongful act; or (d) unjustly received or wrongfully retained any benefit at plaintiffs' expense. As for the SCRA cause of action, it ruled the SCRA did not apply to any challenge to the foreclosure sale, and to the extent plaintiffs challenged the default judgment in the unlawful detainer action, the SCRA did not provide for a private right of action. The court denied plaintiffs leave to amend, stating they had not informed the court how the complaint could be amended to state any cause of action against Cyprexx.

The court thereafter entered judgments in favor of Merritt and Cyprexx. Plaintiffs appeal from those judgments.

### DISCUSSION

#### I. *Cyprexx's Demurrer*

##### A. *Standard of Review*

In reviewing an order sustaining a demurrer, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider

8

matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; see *Coffman Specialties, Inc. v. Department of Transportation* (2009) 176 Cal.App.4th 1135, 1144.) A showing that an amendment would cure the defect may be made for the first time to the reviewing court. (*San Diego City Firefighters, Local 145, v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 606.)

The judgment of dismissal will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground. (*San Diego City Firefighters, Local 145, v. Board of Administration etc.*, *supra*, 206 Cal.App.4th at p. 605.)

B. *Conversion Cause of Action*

Plaintiffs contend the complaint states a cause of action for conversion. In part, they argue it was sufficient to plead that Cyprexx disposed of their property; that it is not necessary for a conversion action that they plead and prove Cyprexx's actions were "wrongful." They maintain alternatively that the complaint alleges conversion through multiple wrongful acts, namely, that Cyprexx violated the SCRA when it removed and

9

sold Villanueva's personal property without a valid court order, and did not comply with Civil Code section 1988 in disposing of the property.

We reject plaintiffs' first contention. It is settled that " ' "[c]onversion is the wrongful exercise of dominion over the property of another." ' " (*Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 45; see also *Hernandez v. Lopez* (2009) 180 Cal.App.4th 932, 939; *Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1065; *Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 451-452.) The foundation for a conversion claim " 'rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results.' " (*Burlesci v. Petersen*, at p. 1066.)

Plaintiffs point to the foregoing authorities, which state the elements in the disjunctive, i.e., that a conversion can occur by proving a "wrongful act *or* disposition of property rights." (E.g., *Plummer v. Day/Eisenberg, LLP*, *supra*, 184 Cal.App.4th at p. 45, italics added.) They argue there need not be a wrongful act if there was a mere disposition of property rights. This argument is unavailing, however, because the gist of the tort is wrongful dominion by the defendant (*Hernandez v. Lopez*, *supra*, 180 Cal.App.4th at p. 939) and the cited authorities use the term "wrongful" to qualify both the act and the disposition of the property rights. If the disposition is not wrongful in some manner—if the person or entity did not do something wrong—the action would not constitute a tort. Plaintiffs miss the mark when they argue neither good or bad faith are at issue in a conversion action. (See *Newhart v. Pierce* (1967) 254 Cal.App.2d 783, 793.) Good and bad faith, as well as knowledge, ignorance or mistake, go to a party's intent or

motives, which are no defense to a claim for conversion (see *Poggi v. Scott* (1914) 167 Cal. 372, 375[4]); those matters are not pertinent to whether the defendant's interference with dominion over property is *unwarranted*.

Plaintiffs' second argument—that they specifically alleged violations of law—is also misplaced. To state a cause of action for conversion, a plaintiff need only allege his or her " ' "ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." ' " (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507.) As against a general or special demurrer, "if plaintiff's ownership of the property is properly alleged and there is an averment that the defendant converted the same, a cause of action [for conversion] is sufficiently stated . . . ." (*Baird v. Olsheski* (1929) 102 Cal.App. 452, 454.) Further, "no particular form of words is essential in averring a conversion, provided the fact of the conversion is sufficiently stated, and it is unnecessary to set forth in what way or by what means the conversion was accomplished [citations], or to allege that the property was wrongfully or unlawfully converted, since the allegation that it was converted, which is a conclusion of fact [citations], implies a wrongful act [citations]." (*Baird v. Olsheski*, at p. 454, citing *Hutchings v. Castle* (1874) 48 Cal. 152; see also *Taylor v. S & M Lamp Co.* (1961) 190 Cal.App.2d 700, 704 [complaint stated a cause of

---

4  "The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action." (*Poggi v. Scott*, *supra*, 167 Cal. at p. 375.)

11

action for conversion where plaintiff alleged it owned a business, notified the defendant of his ownership of the business, defendant surreptitiously caused plaintiff's locks to be removed and equipment and other property to be removed, defendant refused to account for the items, and plaintiff alleged specific items of damage caused by the removal]; *MacDonald v. Kingsley* (1957) 149 Cal.App.2d 376 [complaint stated a cause of action for conversion where it alleged ownership and possession of the property converted, the forcible and unlawful taking thereof by the defendants, and the value of said property].) In *Taylor v. S & M Lamp Co.*, the court stated, "The failure of the complaint to use such terms as 'fraud,' 'to defraud creditors,' 'unlawfully,' or 'wrongfully' does not render the pleading defective where, as here, such conduct and intent is implied from the ultimate facts alleged." (*Taylor v. S & M Lamp Co.*, at p. 705.)

A demurrer is properly sustained, however, where the allegations of the complaint, or attached judicially noticeable documents, negate a cause of action as a matter of law. (See e.g., *Shopoff & Cavallo LLP v. Hyon*, *supra*, 167 Cal.App.4th at pp. 1507-1508; *McKenney v. Purepac Pharmaceutical Co.* (2008) 167 Cal.App.4th 72, 78-79 [general demurrer will lie where the complaint has included allegations that clearly disclose some defense or bar to recovery]; *Flores v. Kmart Corp*. (2012) 202 Cal.App.4th 1316, 1324 [demurrer based on an affirmative defense will be sustained where the face of the complaint discloses that the action is necessarily barred by the defense].) In *Shopoff*, for example, a complaint failed as a matter of law to state a claim for conversion against a trustee of allegedly converted settlement recovery proceeds who had filed an interpleader action, which avoided the risk of liability to the person entitled to those proceeds.

12

(*Shopoff*, at p. 1508.) As a matter of law, the trustee did not exercise dominion over the funds sufficient to convert them to his own use. (*Ibid*.)

Here, plaintiffs' complaint places responsibility on the foreclosing entity, Deutsche Bank (also referred to as the "landlord"), for the wrongful seizure and sale of plaintiffs' personal property.[5] According to plaintiffs, their property was sold at a public auction. They allege that Cyprexx was merely a subcontractor of Deutsche Bank, and that Cyprexx was retained to reclaim the personal property and conduct the sale. Plaintiffs provide no authority for the proposition that under such circumstances, the third party agent for the landlord is vicariously responsible or liable for the landlord's conversion. We conclude plaintiffs cannot establish that by arranging to sell the property at a public auction at the direction of Deutsche Bank, Cyprexx exercised dominion over the funds or converted them to *Cyprexx*'s own use so as to state a cause of action against Cyprexx for conversion.

C. *Wrongful Eviction*

"[A] person in peaceable possession of real property may recover, in an action sounding in tort, damages for injuries to his person and goods caused by the forcible entry of one who is, or claims to be, the lawful owner or possessor . . . ." (*Daluiso v.*

---

5  Plaintiffs allege: "The Landlord in the [second unlawful detainer action] maintains that Defendants had a reasonable belief that . . . Balverde was the hold over tenant in the [section] 1161 action after foreclosure. However, it refused to return the Personal Property to this Plaintiff. The Landlord did not have a reasonable belief that . . . Balverde was the tenant. Further, pursuant to [section] 1174[, subdivision] (f), the Landlord failed to give notice to ANYONE that the Personal Property was deemed abandoned and would be sold. *Thus, the Landlord is liable for the damages that stemmed from its wrongful levy, seizure and sale*." (Italics added, some capitalization omitted.)

13

*Boone* (1969) 71 Cal.2d 484, 486.) The essential elements of a tort claim for wrongful entry or eviction are (1) the plaintiff's peaceable possession, and (2) the defendant's forcible entry. (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1040.) The defendant's title or right of possession is no defense to such action. (*Daluiso v. Boone*, at p. 486.)

Plaintiffs contend the complaint adequately alleges both elements of a wrongful eviction cause of action. They argue their allegations that Villanueva resided at the Arroyo property and stored his possessions there was sufficient to establish his peaceable possession; that the fact he lost title to his home through a nonjudicial foreclosure is immaterial. They further argue they made an adequate allegation of Cyprexx's claim of lawful possession by alleging Cyprexx had been retained to reclaim and had seized plaintiffs' personal property from the Arroyo property.

We conclude, however, plaintiffs cannot establish the essential elements of wrongful eviction against Cyprexx. Plaintiffs allege that Cyprexx was the entity that seized their *personal property*. Specifically, they allege "Cyprexx is the entity retained by Defendants as sub contractors [*sic*] for reclaiming the Personal Property and to conduct a sale and/or other disposition of the Personal Property." They do not allege that Cyprexx dispossessed them from the Arroyo property, and indeed, the complaint specifically alleges that *Deutsche Bank* was the entity that obtained the writ of possession evicting Balverde from the premises. By statute, a forcible entry occurs when any person "[w]ho, after entering peaceably upon real property, turns out by force, threats, or

14

menacing conduct, the party in possession." (§ 1159, subd. (2).) Even assuming a forcible entry occurred, plaintiffs' allegations demonstrate it was not done by Cyprexx.

We observe further that plaintiffs' complaint indicates the sheriff served Balverde with the writ of possession of the Arroyo property (Judicial Council form EJ-130, attached as exhibit 9 of plaintiffs' complaint) on November 10, 2009, that Balverde was removed from the Arroyo property on November 30, 2009, and that the sheriff returned the writ on December 1, 2009. Plaintiffs allege the writ of possession "was used to remove and sell or otherwise dispose of ALL of plaintiffs Villanueva's and Balverde's Personal Property." Though exhibit 9 contains only the first side of the two-sided Judicial Council form, we take judicial notice that the reverse of the form includes a statement that any personal property remaining on the real property after the landlord is in possession will be disposed of under section 1174 unless the tenant pays the reasonable cost of storage and takes possession of the personal property not later than 15 days after the landlord takes possession of the real property. (§ 715.010, subd. (b)(3).) As of December 5, 2009, when Balverde wrote Merritt and informed her that she had Villanueva's general power of attorney, Balverde had notice of her rights to reclaim the personal property remaining on the Arroyo property, but did not timely exercise those rights on her own behalf or on Villanueva's behalf as his legal representative.

D. *Replevin/Claim and Delivery*

An action for replevin or its statutory successor, claim and delivery, is intended to obtain recovery of specific personal property. (*Stockton Morris Plan Co. v. Mariposa County* (1950) 99 Cal.App.2d 210, 215; *Simms v. NPCK Enterprises, Inc.* (2003) 109

15

Cal.App.4th 233, 241.) In order to obtain a judgment on a replevin action, "it must be shown that possession was in the defendant at the time of the beginning of the action or that he had the power to make delivery of the personal property . . . ." (*Stockton Morris*, at p. 215.)

In support of this cause of action, plaintiffs allege that defendants "have wrongfully and intentionally seized, destroyed and or sold said personal property" and that the "wrongful and unlawful possession of the property occurred in December[ ] 2009." As Cyprexx points out, plaintiffs' introductory allegations are that at the time of the filing of the complaint, the personal property at issue had already been sold at public auction. These allegations defeat the replevin cause of action as a matter of law, as they demonstrate Cyprexx did not have the power to deliver the personal property at the time of the complaint's filing.

E. *Unjust Enrichment*

" ' "[T]here is no cause of action in California for unjust enrichment." ' " (*Levine v. Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1138, quoting *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370, and see *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793; *McKell v. Washington Mutual, Inc*. (2006) 142 Cal.App.4th 1457, 1490 ["unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust"].) "Unjust

16

enrichment is synonymous with restitution." (*Durell*, at p. 1370.[6]) Thus, plaintiffs' mere allegation that defendants have been unjustly enriched by their "wrongful acts and omissions" does not state a cause of action. (*Levine*, at p. 1138.)

On review of an order sustaining the demurrer, we nevertheless may assess whether plaintiffs' allegations state a cause of action that may give rise to a right to restitution. (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387-388.) "There are several potential bases for a cause of action seeking restitution. . . . [R]estitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct. In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory . . . . [Citations.] In such cases, where appropriate, the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment." (*McBride*, at p. 388, fn. omitted.) Because we have not found allegations sufficient to demonstrate that Cyprexx committed some wrongdoing in which it obtained a benefit from plaintiffs, there is no basis to allow plaintiffs' unjust enrichment claim to stand.

---

[6]    " 'Under the law of restitution, "[a]n individual is required to make restitution if he or she is unjustly enriched at the expense of another. [Citations.] A person is enriched if the person receives a benefit at another's expense. [Citation.]" [Citation.] However, "[t]he fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." ' " (*Durell v. Sharp Healthcare*, *supra*, 183 Cal.App.4th at p. 1370.)

F. *Violation of the SCRA*

"The SCRA applies to any judicial proceeding in state court, except criminal proceedings. [Citation.] The purposes of the SCRA are '(1) to provide for, strengthen, and expedite the national defense through protection extended . . . to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and [¶] (2) to provide for the temporary suspension of judicial . . . proceedings . . . that may adversely affect the civil rights of servicemembers during their military service.' [Citation.] '[T]he SCRA must be construed to prevent any disadvantage to a servicemember litigant resulting from his or her military service' and 'must be "liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." ' " (*In re A.R.* (2009) 170 Cal.App.4th 733, 740-741.)

Under the SCRA, no default judgment may be taken against persons in the military service unless the plaintiff meets specified procedural requirements. Specifically, before entry of a default judgment, the plaintiff must file a declaration stating whether or not the defendant is in military service, or if plaintiff is unable to determine whether the defendant is in military service, stating so. (50 U.S.C. Appen. § 521(b)(1).) One who makes or uses such an affidavit, knowing it to be false, "shall be fined as provided in title 18, United States Code, or imprisoned for not more than one year, or both." (50 U.S.C. Appen. § 521(c).)

In support of their cause of action alleging violations of the SCRA, plaintiffs allege generally that the SCRA permits military servicemembers to defend their interests

18

in court hearings or default proceedings. They then allege: "Villanueva was unable to protect his interests, as the Foreclosing Defendants signed under penalty of perjury that . . . Villanueva was non-military, in direct violation of [the SCRA], which requires notification of service members on active duty. [¶] . . . The Defendants failed to make a minimal search to discover whether or not . . . Villanueva was deployed. Further, . . . Balverde had sent documentation to Foreclosing Defendants, proving that not only was . . . Villanueva in the military, but that . . . Balverde could not contact him. [¶] . . . With utter disregard, the Defendants moved forward with the default judgment. Based on this fraudulent misrepresentation to the court, . . . Villanueva was never afforded due process or his opportunity to be heard and judgment was entered against him." (Some emphasis and capitalization omitted.)

These allegations seek to impose liability on the "foreclosing defendants" otherwise identified in the pleading as GMAC or Deutsche Bank, for the default judgment. As pointed out above, Cyprexx was not a foreclosing defendant and there are no allegations stating it entered or caused any judgment to be entered against Villanueva. Further, the complaint specifically alleges that Merritt, on Deutsche Bank's behalf, signed a false declaration of nonmilitary status, not Cyprexx. The complaint accordingly cannot impose liability on Cyprexx for the filing of that declaration assertedly in violation of the SCRA.

Nevertheless, on appeal plaintiffs argue the complaint states violations of the SCRA against Cyprexx, specifically under title 50 United States Code Appendix sections 531 and 537. They argue Cyprexx violated title 50 United States Code Appendix section

19

537 by selling Villanueva's possessions without a court order, and violated title 50 United States Code Appendix section 531 by removing and selling the personal property from Villanueva's home.[7]

    1. *Title 50 United States Code Appendix Section 531*

During a period of military service of a servicemember, title 50 United States Code Appendix section 531(a)(1)(A) prohibits a landlord or another person with paramount title from evicting a servicemember or the servicemember's dependents from a premises that is occupied "primarily as a residence" and "for which the monthly rent does not exceed $2,400." Title 50 United States Code Appendix section 531 (a)(1)(B) prohibits a landlord or other person with paramount title from "subject[ing] such premises to a distress during the period of military service."[8] Neither of these

---

[7]    Plaintiffs rightly do not claim that the complaint alleges a violation of section 533 of the SCRA, which grants protections with respect to mortgages and trust deeds. The plain terms of the statute make it clear that it applies only to mortgage loan obligations that originated *before* military service began. (50 U.S.C. Appen. § 533(a); *Williams v. U.S. Bank Nat. Assoc*. (C.D.Cal., Feb. 13, 2013, No. ED CV12-00748-JLQ) 2013 WL 571844; *Coward v. JP Morgan Chase* (E.D.Cal., June 15, 2012, No. 2:11-cv-00378-GEB-DAD) 2012 WL 2263359.) Here, plaintiffs allege that Villanueva "*was and is at all times mentioned herein*, in the military . . . and was *at all relevant times*, and still is, deployed on active duty." (Italics added.) These allegations show that Villanueva's loan obligation, which arose in February 2007, originated during his military service.

[8]    A distress "is the taking of another's personal property out of his possession either for holding or for sale in order to obtain satisfaction of a past due rent claim." (*Lesher v. Louisville Gas & Electric Co.* (W.D.Ky. 1943) 49 F.Supp. 88, 90.) One federal court explained that "[a]lthough this monthly rent limitation on what premises are covered appears in [title 50 United States Code Appendix section] 531(a)(1)(A) (the eviction provision), the limitation covers [title 50 United States Code Appendix section] 531(a)(1)(B) (the distress provision) as well because that provision prevents 'subject[ing] *such* premises to a distress,' thereby incorporating the limitations specified previously in

20

prohibitions apply to disposition of personal property following a nonjudicial foreclosure sale. And, in view of the SCRA's use of the terms " '*landlord*, *rent*, *eviction*, and *distress*, courts have construed the substantially similar predecessor statute to [title 50 United States Code Appendix section] 531 as 'contemplat[ing] a landlord-tenant relationship.' " (*Jimenez v. Miami-Dade County*, *supra*, 2013 WL 214673, at p. *3, citing *Clinton Cotton Mills v. United States* (4th Cir.1947) 164 F.2d 173, 176 & *Arkless v. Kilstein* (E.D.Pa. 1944) 61 F.Supp. 886, 888 [the predecessor statute relates to disturbing the landlord-tenant relationship because it uses the term *agreed rent* and because it refers to a maximum monthly rent] & *Lesher v. Louisville Gas & Electric Co.*, *supra*, 49 F.Supp. at pp. 89-90 [utility company's disconnecting power to a residence did not violate the predecessor statute because there was no landlord-tenant relationship between the company and the bill payer].)

Here, plaintiffs have not alleged any landlord-tenant relationship with Cyprexx, nor can they in view of their allegations that Cyprexx was merely a subcontractor retained by Deutsche Bank to sell the personal property remaining on the Arroyo property. Nor have they alleged the Arroyo property was premises "for which the monthly rent does not exceed $2,400." Plaintiff cannot allege the circumstances constitute a distress because Cyprexx's sale was not in "satisfaction of a past due rent claim." Though courts must construe the SCRA liberally (*In re A.R.*, *supra*, 170 Cal.App.4th at p. 741), we will not rewrite the statute to cover circumstances beyond the

the statute." (*Jimenez v. Miami-Dade County* (S.D.Fla., Jan. 18, 2013, No. 11-23131-Civ.) 2013 WL 214673, at p. *3.)

plain meaning of its provisions to make it more just or fair.  (*Thornton v. California Unemployment Ins. Appeals Bd.* (2012) 204 Cal.App.4th 1403, 1419.)

2. *Title 50 United States Code Appendix Section 537*

Title 50 United States Code Appendix section 537, entitled "Enforcement of storage liens," provides, in pertinent part:  "(a) Liens  [¶]  (1) Limitation on foreclosure or enforcement  [¶]  A person holding a lien on the property or effects of a servicemember may not, during any period of military service of the servicemember and for 90 days thereafter, foreclose or enforce any lien on such property or effects without a court order granted before foreclosure or enforcement."  A lien under this provision is defined  as including "a lien for storage, repair, or cleaning of the property or effects of a servicemember or a lien on such property or effects for any other reason."  (50 U.S.C. Appen. § 537(a)(2).)  The reference to liens in title 50 United States Code Appendix section 537 encompasses only liens for storage, repair or cleaning, or other liens similar in nature; it does not encompass other specific types of liens governed by different sections of the SCRA, such as liens for an installment contract, motor leases, mortgages, or tax liens.  (*Whigham v. Chase Auto Fin. Corp.* (E.D.Va. 2011) 826 F.Supp.2d 914, 917-920.)

Here, Cyprexx's involvement was limited to the sale of plaintiffs' personal possessions.  There is no allegation that Cyprexx held a storage lien or any other type of lien contemplated by title 50 United States Code Appendix section 537, and the complaint, as we have stated, makes clear that Cyprexx was not responsible for the foreclosure sale.  Under these circumstances, plaintiffs cannot state a cause of action

22

against Cyprexx for a violation of section 537 of the SCRA. (Accord, *United States v. B.C. Enterprises, Inc.* (E.D.Va 2009) 667 F.Supp.2d 650, 657-659 [general manager of corporation who supervised and directed the sale of servicemembers' vehicles at auction pursuant to storage liens was as a matter of law not a "person holding a lien on the property or effects of a servicemember" within the meaning of the SCRA because the lien was held by the corporation, not by the general manager].)

## II. *Merritt's Anti-SLAPP Motion*

Plaintiffs contend the trial court erred by granting Merritt's anti-SLAPP motion. They argue Merritt did not meet her burden to show their complaint arose from any free speech or petition rights, and even if she had, they established a probability of prevailing on the merits of their cause of action for violations of the SCRA. As we will explain, we disagree.

### A. *Standard of Review*

Section 425.16 provides a procedural remedy to dispose of lawsuits that are brought to chill or punish a party's valid exercise of constitutional rights to free speech and to petition the government for redress of grievances. (*Personal Court Reporters, Inc. v . Rand* (2012) 205 Cal.App.4th 182, 188.)

An evaluation of an anti-SLAPP motion involves two steps. "[T]he trial court first determines whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity. [Citation.] Under . . . section 425.16 '[a] cause of action against a person arising from any act of that person in furtherance of

23

the person's right of petition or free speech . . . shall be subject to a special motion to strike . . . .' [Citation.] 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' [Citation.] 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation. [Citations.]

"If the court finds the defendant has made the threshold showing, it determines then whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.] 'In order to establish a probability of prevailing on the claim . . . , a plaintiff responding to an anti-SLAPP motion must " 'state[ ] and substantiate[ ] a legally sufficient claim.' " [Citations.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056 (*Rusheen*).)

We review de novo the trial court's order granting Merritt's special motion to strike. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819.) A reviewing court will " 'independently review the record to determine whether the asserted causes of action arise from the defendant's free speech or petitioning activity, and, if so, whether the plaintiff has shown a probability of prevailing. [Citations.] We consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." [Citations.] We do not reweigh the evidence, but accept as true all evidence favorable to the plaintiff and evaluate the defendant's evidence only to

24

determine if it has defeated the evidence submitted by the plaintiff as a matter of law. [Citations.] If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion.' " (*Personal Court Reporters, Inc. v. Rand*, *supra*, 205 Cal.App.4th at pp. 188-189.)

B. *Merritt's Threshold Burden*

Plaintiffs contend Merritt cannot meet her initial burden to show the causes of action against her arise from protected activity. They maintain their allegations show she engaged in illegal conduct that is unprotected by the anti-SLAPP law, that is, naming only Balverde as a defendant in the second unlawful detainer action and not Villanueva, who was assertedly an indispensible party; attesting that the true names and capacities of the Doe defendants were unknown; and knowingly filing a false declaration of nonmilitary status (50 U.S.C. Appen. § 521(c)) in connection with the second unlawful detainer action, which also violated the Rules of Professional Conduct, rule 5-200, requiring candor before the court.

Merritt responds that plaintiffs' allegations all relate to her prosecution of the unlawful detainer litigation, and thus all of the causes of action arise from written or oral statements "made before a . . . judicial proceeding," or "made in connection with an issue under consideration or review by a . . . judicial body," and the conduct on which her liability is based falls within "any other conduct in furtherance of the exercise of the constitutional right of petition . . . ." (§ 425.16, subd. (e)(1), (2) & (4).)

25

Merritt is correct. " 'The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16.' " (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479; see also *Rusheen*, *supra*, 37 Cal.4th at p. 1056 [" 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike' "]; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1418-1420 [anti-SLAPP statute protected attorney's pro bono representation of clients sued in unlawful detainer action that gave rise to plaintiff's later claims against attorney for defamation, misrepresentation, and intentional and negligent infliction of emotional distress].) Plaintiffs seek to impose liability on Merritt solely for her filing of pleadings, including notices of default, in connection with the unlawful detainer proceedings.

Merritt further maintains that under *Rusheen*, *supra*, 37 Cal.4th 1048 and *Pollack v. University of Southern California* (2003) 112 Cal.App.4th 1416 even the filing of an erroneous declaration of nonmilitary status is within the core protection of the anti-SLAPP statute. Plaintiffs, on the other hand, argue the anti-SLAPP does not apply under *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*) and *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, because Merritt's conduct was illegal.

In *Flatley*, the California Supreme Court confirmed that unlawful or criminal activities do not qualify for protection under the anti-SLAPP law as protected speech or petitioning activities. (*Flatley*, *supra*, 39 Cal.4th at pp. 317, 330 [attorney's conduct constituted criminal extortion]; *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 711.) The court explained, however, that the illegality must appear "as a matter of law."

26

(*Flatley*, at p. 320.) That is, only where the defendant "concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law" is he or she precluded from using the anti-SLAPP law to strike the action. (*Ibid*.) "[W]hen the defendant's assertedly protected activity *may or may not be* unlawful, the defendant may invoke the anti-SLAPP statute *unless* the activity is unlawful as a matter of law." (*Dwight R*., at p. 711.)[9] In *Lefebvre v. Lefebvre*, *supra*, 199 Cal.App.4th 696, the appellate court held a defendant failed to show that false police reports were not protected by the anti-SLAPP law, but in that case, the trial court found that the record " 'conclusively' established" the defendants' statements to police were illegal under Penal Code section 148.5. (*Lefebvre*, at p. 701; see also *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 951-952 & fn. 13 [summarizing the "unusual, if not unique" facts in *Lefebvre*].)

Here, plaintiffs' assertion of illegality does not meet *Flatley's* standard. Merritt has not conceded, nor is the evidence conclusive, that her filing of either declaration of nonmilitary service was false, illegal or a crime as a matter of law. (*Flatley*, *supra*, 39 Cal.4th at p. 320.) *With* respect to the first declaration of nonmilitary service, Merritt averred in both her supporting and reply anti-SLAPP declarations that she was never

---

9       At least one appellate court has interpreted the requirement that conduct be "illegal" to mean the activity must be "criminal, and not merely violative of a statute." (*Mendoza v. ADP Screening and Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654.) The court reasoned in part that "a reading of *Flatley*[, *supra*, 39 Cal.4th 299] to push any statutory violation outside the reach of the anti-SLAPP statute would greatly weaken the constitutional interests which the statute is designed to protect." (*Mendoza*, at p. 1654.)

notified by plaintiffs that Villanueva was a servicemember or on active duty, and she believed neither he nor Balverde were servicemembers. Plaintiffs offered no contrary evidence. According to Merritt, after she was advised by Balverde that Villanueva was a servicemember, she cancelled execution of the writ of possession. Only Balverde, who was not shown to be a servicemember, was named as a defendant in the second unlawful detainer action. Indeed, the evidence submitted by plaintiffs in opposition to Merritt's anti-SLAPP motion—Merritt's May 2011 declaration responding to Balverde's motion to vacate the October 2009 judgment—confirms that Merritt only named Balverde in that action because she believed Balverde was the sole occupant of the Arroyo property and she was the only person who had claimed a right to possess it by filing a section 1174.25 prejudgment claim of right to possession. Merritt averred that though Balverde had advised her she was Villanueva's attorney in fact under a military general power of attorney and that she was therefore Villanueva's "legal representative" within the meaning of the SCRA (50 U.S.C.A. Appen. § 519), Balverde had not asserted a possessory interest, or any claims or defenses, on Villanueva's behalf. Plaintiffs provide no legal authorities suggesting Villanueva should have been named and sued in that action as a matter of law. Indeed, only a tenant in *actual occupation* of the premises, and a subtenant if there is one, are necessary parties defendant in an unlawful detainer action. (§ 1164; *Cardenas v. Noren* (1991) 235 Cal.App.3d 1344, 1350.)

Nor does the authority plaintiffs cite on appeal, *Arrieta v. Mahon* (1982) 31 Cal.3d 381, compel such a conclusion. *Arrieta* involved claims for declaratory and injunctive relief challenging a Los Angeles County Marshal policy to evict all occupants of

28

premises after an unlawful detainer judgment, whether or not they were named in a writ of execution. (*Id.* at p. 383.) The California Supreme court held that "the eviction of any adults not named in the writ who claim a right to possession of the disputed premises that arose before the unlawful detainer action was commenced, violated the rights of such individuals to procedural due process under the Fourteenth Amendment of the United States Constitution and article I, section 7, subdivision (a) of the California Constitution." (*Arrieta*, at pp. 383-384.) Thereafter, the California legislature codified *Arrieta* to provide a statutory procedure for an occupant not named in a judgment for possession to present a claim of a right to possession. (See §§ 415.46, 1174.25, 1174.3, subd. (b); *George v. County of San Luis Obispo* (2000) 78 Cal.App.4th 1048, 1054; *Cardenas v. Noren*, *supra*, 235 Cal.App.3d at pp. 1348-1350 [purpose of claim of right to possession is to put the landlord on notice, make the claimant a party, and to constitute a general appearance for proceeding with the unlawful detainer action].) It was for Villanueva, or Balverde on Villanueva's behalf, to present a claim of right to possession to a levying officer if Villanueva sought to claim a right superior to Deutsche Bank's and have a court determine the validity of that claim. (*Cardenas*, at pp. 1349-1350 [because appellant could have invoked the statutory procedure under section 1174.3 before he was evicted, he was not entitled to a writ of mandate compelling the sheriff to reinstate him as a tenant].)

Rather, plaintiffs' allegations against Merritt stem from, and the gravamen of their lawsuit is, Merritt's filing of fraudulent or perjured documents in connection with the unlawful detainer proceedings. In *Rusheen*, the plaintiff sued an attorney, Cohen, for

29

abuse of process, alleging Cohen had submitted a perjurious declaration in connection with an earlier default judgment that ultimately was ordered vacated by the Court of Appeal. (*Rusheen*, *supra*, 37 Cal.4th at pp. 1053-1054.) In the superior court, Cohen succeeded on his ensuing anti-SLAPP motion brought on grounds the abuse of process claim was barred by the litigation privilege, but the Court of Appeal reversed, holding that while the filing of the perjured declaration was absolutely privileged, the gravamen of the action was " 'a conspiracy to enforce a judgment obtained through the use of perjured declarations of service,' which 'culminated in the noncommunicative conduct of enforcing the judgment.' " (*Id*. at p. 1059.)

The California Supreme Court took up the issue and disagreed with the appellate court's conclusion. It observed that the Court of Appeal had not identified any alleged wrongful conduct by Cohen other than simply filing perjured declarations and the enforcement of a judgment was simply an extension of the judicial process: "the object of any civil action for damages." (*Rusheen*, *supra*, 37 Cal.4th at p. 1062.) According to the court, "On close analysis, the gravamen of the [plaintiff's abuse of process] action was not the levying act, but the procurement of the judgment based on the use of allegedly perjured declarations of service. Because these declarations were communications '(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) *to achieve the objects of the litigation*; and (4) that have some connection or logical relation to the action' . . . , the litigation privilege applies to the declarations and protects against torts arising from the privileged declarations. . . . [A]s Cohen argues, since a party may not be liable for submitting false testimony or evidence

30

in the course of judicial proceedings which are used to obtain a judgment, the party should likewise be immune from abuse of process claims for subsequent acts necessary to enforce it. Otherwise, application of the litigation privilege would be [undermined]. Thus, where the gravamen of the complaint is a privileged communication (i.e., allegedly perjured declarations of service) the privilege extends to *necessarily related noncommunicative acts* (i.e., act of levying)." (*Id.* at pp. 1062-1063, italics added.)

Here, plaintiffs' claim of the asserted illegal nature of Merritt's filing of false declarations does not warrant a conclusion that those actions fall outside of the anti-SLAPP law. Hence, the burden shifted to plaintiffs to demonstrate a probability of prevailing on the merits of their causes of action.

C. *Probability of Prevailing on the Merits*

Plaintiffs maintain they met their burden under the second prong of the anti-SLAPP law. Their briefing is directed solely to the cause of action under the SCRA; they maintain they demonstrated a probability of prevailing on the merits on that cause of action. Specifically, plaintiffs argue Merritt violated section 521 of the SCRA by signing the declaration of nonmilitary status in the second unlawful detainer action, and that the Civil Code section 47, subdivision (b) litigation privilege does not protect her behavior because it was akin to the unethical, blatantly false, statements concerning issuance of a bench warrant found to be possibly criminal and unprotected in *Carney v. Rotkin, Schmerin & McIntyre* (1988) 206 Cal.App.3d 1513 (*Carney*), or the sending of a erroneous prelitigation demand letter as in *Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140.

We are not persuaded. Plaintiff's SCRA cause of action against Merritt, which is based on Merritt's filing of a Judicial Council form pleading declaration for purposes of obtaining an unlawful detainer default judgment, is barred by the litigation privilege. "For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as [Civil Code] section 47[, subdivision (b)]." (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193.) To invoke the privilege, the party claiming it must show that the communication at issue was "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [it has] some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)

Plaintiffs' cited authority, *Carney*, relied on an "interest of justice" requirement set forth in *Kinnamon v. Straitman & Snyder* (1977) 66 Cal.App.3d 893 (*Carney*, *supra*, 206 Cal.App.3d at p. 1522), that was expressly overruled by the California Supreme Court in *Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 219. Thus, *Carney*'s holding is no longer good law. (See *Kashian v. Harriman* (2001) 98 Cal.App.4th 892, 917-920 [explaining *Silberg*'s overruling of both *Kinnamon* and *Carney*].) We shall not follow *Carney*'s analysis, which assessed whether the law firm's statements to an elderly judgment debtor were made "to serve the purpose of litigation . . . ." (*Carney*, at p. 1522.) And *Nguyen v. Proton Technology Corp.*, *supra*, 69 Cal.App.4th 140, does not support plaintiffs' position. That case involved an employer's prelitigation demand letter accusing a former employee of committing acts of unfair competition, and also erroneously

32

mischaracterizing the employee's criminal record (stating he was in prison for "repeatedly and violently assaulting his wife" when in fact he was convicted of shooting a gun at an unoccupied vehicle and vandalism and served in county jail). (*Id*. at pp. 143, 151.) The Court of Appeal found the inclusion of references to the employee's criminal record in the prelitigation communication tenuous or "substantially extraneous" to the threatened litigation. (*Id*. at pp. 142, 151.)

Here, Merritt's alleged conduct was not only related to Deutsche Bank's action, but it was an integral part of the litigation on Deutsche Bank's behalf. The assertedly wrongful declarations were (1) filed in a judicial proceeding; (2) by litigants or their attorneys; (3) to achieve the objects of the litigation; and (4) were logically related to the action. The fact they are alleged to be perjured does not take them outside the litigation privilege. (See *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 958-959 ["Obviously, perjury is not permitted by law. But the cases are clear that the litigation privilege extends to civil actions based on perjury. [¶] . . . [¶] . . . [D]eclarations of service to obtain a default judgment are a category of publication permitted by law. Hence, the litigation privilege protects all such declarations"].) "The purposes of [Civil Code] section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation. [Citation.] To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice. [Citation.] Moreover, '[i]n furtherance of the public policy

33

purposes it is designed to serve, the privilege prescribed by [Civil Code] section 47[, subdivision (b)(2)] has been given broad application.' " (*Rusheen*, *supra*, 37 Cal.4th at pp. 1062-1063.) These policies dictate that Merritt's filings are absolutely privileged.

D. *Leave to Amend*

Plaintiffs ask this court, if we do not agree with their arguments under the anti-SLAPP law, to grant them leave to amend their complaint to add a malicious prosecution claim against Merritt. Citing *Sheehan v. San Francisco 49ers, Ltd.* (2009) 45 Cal.4th 992, they argue the "lack of a properly labeled claim does not defeat the claim, as amendment must be permitted unless a complaint is 'incapable' of amendment under any recognized theory." *Sheehan*, however, was decided after the trial court sustained a demurrer; the case does not involve the anti-SLAPP statute. (*Id*. at p. 996.)

Plaintiffs' request for leave to amend is beyond the purview of the anti-SLAPP statute. "[S]ection 425.16 provides no mechanism for granting anti-SLAPP motions *with leave to amend*." (*Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 629 [explaining that allowing a SLAPP plaintiff leave to amend the complaint once the court finds the defendant's prima facie showing has been met would undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy].) "Trial courts should either grant or deny such motions in toto, i.e., without leave to amend, prior to ruling on any pending demurrers. A proper ruling on the anti-SLAPP motion would, in most cases, obviate the need to rule on the demurrer at all or, at the very least, in its entirety." (*Martin*, at p. 629.)

34

III. *Merritt's Request for Sanctions*

Merritt has moved for an award of $20,964 in sanctions against plaintiffs and their attorneys for filing an objectively frivolous appeal and to deter them from "further harassing Merritt and burdening the courts . . . ."  Merritt argues we should infer plaintiffs are "motivated by a desire to inflict financial and emotional pain on [her] as punishment for her legal representation . . . ."

Though plaintiffs' appeal is without merit, we do not find it was frivolous, vexatious, or "taken solely for delay."  (§ 907; Cal. Rules of Court, rule 8.267(a)(1).)  "[A]ny definition [of a frivolous appeal] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal.  Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal.  An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions.  Counsel should not be deterred from filing such appeals out of a fear of reprisals."  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  Merritt has not presented us with any significant indication that plaintiffs' appeal was taken in bad faith or solely for purposes of delay, and it does not meet *Flaherty*'s legal standard for frivolousness.  We decline to impose monetary sanctions for plaintiffs' pursuit of this appeal.

DISPOSITION

The judgments are affirmed.  The parties shall bear their own costs on appeal.


                                                   O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.